[Crim. No. 1070.   Fourth Dist.   July 17, 1956.]

THE PEOPLE, Respondent, v. CHARLES THOMAS AKERS, Appellant.

Charles Thomas Akers, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant and appellant, aged 42, was convicted by a jury on a charge of committing lewd and lascivious acts on a boy, 11 years old, in violation of section 288 of the Penal Code, in one count, and in a second count of the crime of sex perversion (oral copulation) in violation of section 288a of the Penal Code. He was sentenced to state's prison, sentences to run concurrently on each count.

It does not appear from the record that a motion for new trial was made. Accordingly, the attempted appeal from an order denying such a motion must be dismissed.

The boy, Michael, here involved, testified, generally, that he was selling newspapers at a prominent corner in San Diego, near an inn or beer parlor, about 4:30 p. m., and that he solicited a sale of one of his papers to defendant, who was just entering the inn to buy a drink of beer; that after defendant came out, the boy, not recognizing him, again asked him to buy a paper and defendant remarked ''Come over to my room (across the street) and I will buy all of your papers.'' Michael picked up about 20 papers and started to follow the defendant. Defendant remarked, ''Walk a little ways behind, about six paces.'' When they arrived, defendant unlocked the door to his room and asked the boy to let him see his penis. The boy then described in particular defendant's conduct. In general, it consisted of helping the boy unzip his trousers and expose his penis and, for about five minutes, he committed the act of copulating the boy's penis with defendant's mouth. Thereafter the defendant told the boy to take off his clothes and sit on the bed and a similar act occurred for the next five minutes. Defendant then got up and went over to a drawer in the dresser, secured some pictures of nude women, and showed them to the boy. Defendant undressed himself except for his socks and then asked for the boy to pick out one of the pictures he liked best and made a vile suggestion as to it. Another similar act of copulation took place while they were in the nude on the bed and then defendant changed his position and started kissing Michael on the lips, sucking his nipples on his chest, and hugging him. He placed Michael's hand on defendant's private parts. He told Michael not to tell anyone and asked him if he would like to be his son and if he would, he would not have to sell newspapers any more and he would buy him a new bicycle. Michael described the sensation he felt during these occurrences and said he had never had such acts committed on him before. Defendant gave the boy only $1.50 for his 20 papers, which sold for 10 cents each, and said he had no more money left but if Michael would come back at 7 o'clock, he would give him $5.00. Finally, the boy told defendant he wanted to leave and defendant committed another similar act of copulation. Thereafter the boy dressed, opened the door and left with his 20 papers. Defendant was, at the time, still undressed except for his socks. Michael crossed the street and told the police, who had been called at the suggestion of another newsboy who saw the early part of this

episode and was curious about the absence of Michael from the corner at that hour. He testified he first saw Michael walking "sort of behind Mr. Akers toward the rooming house" and that Michael had previously told him the defendant was going to buy all of his papers.

Two police officers heard the story above related by Michael and proceeded with him to the room, knocked on the door, and defendant inquired as to who was there. They replied, "police officers," and defendant opened the door. Defendant was nude at the time and before accusation was made, defendant remarked that it was a "bum rap" and that someone was trying to "frame" him. One officer took Michael out of the room. The other officer then noticed the nude pictures, some on the floor and others on the bed. Defendant was then informed of the boy's story and the nature of the charge. He admitted the boy had been in the room and that he had given him some money. Defendant was taken to jail and later stated he saw the boy at the corner that evening and told him he would buy all of his papers and that the boy later came to his room while he was dressing and he gave him $1.00 and told him to sell his papers to someone else; that the door was open or left ajar about one foot all of this time. He testified showing the boy the pictures and denied the acts. Later he signed a written statement that he had been drinking quite heavily; that after he agreed to buy all of the boy's papers, the boy followed him to his room where the boy became interested in some art pictures that defendant had.

Defendant testified that he agreed to buy all of the boy's papers and the boy went down the street and gathered up some more; that he did not have sufficient change to satisfy him; that he invited him to his room where he thought he had enough money to pay him and found that he had only $1.00 and that the boy argued with him about his refusal to buy all his papers and he told him to come back at 7 o'clock and he would have the money. He further testified that at all times the blinds on the porch window were up. In rebuttal, the landlady said she noticed that about this time the blinds had been pulled down in defendant's room, that the door to his room was closed and that when she previously made defendant's bed there was no evidence of pictures in the room or on the bed.

As we construe the contentions of appellant on this appeal, he claims that the two charges in the information con-

stituted but one act and accordingly, he suffered double jeopardy in being tried and convicted on the two counts indicated. He cites such authority as *People* v. *Nor Woods,* 37 Cal.2d 584 [233 P.2d 897] and *People* v. *Greer,* 30 Cal.2d 589 [184 P.2d 512].

*People* v. *Slobodion,* 31 Cal.2d 555 [191 P.2d 1] is factually so similar to the instant case no further consideration of the point is required. ■ It is clear that the evidence shows certain acts denounced by section 288 of the Penal Code were committed independent of the acts denounced by section 288a, which acts would not be necessarily or normally associated with each other. The defendant was properly charged and convicted of the two crimes and he did not suffer double jeopardy. (*In re Chapman,* 43 Cal.2d 385, 389 [273 P.2d 817].)

It is next argued that the testimony of the boy was "inherently improbable." ■ Evidence which discloses circumstances that are unusual cannot be said to be inherently improbable. (*People* v. *Klinkenberg,* 90 Cal.App.2d 608 [204 P.2d 47, 613].) In the instant case the jury had before it all the circumstances bearing on the matter and undoubtedly concluded that the offense was not only possible but was in fact perpetrated as related. ■ The credibility of the witnesses and the weight to be accorded to their testimony are matters left solely to the discretion of the trier of fact. (*People* v. *Leete,* 130 Cal.App.2d 725 [279 P.2d 769]; *People* v. *Shevette,* 98 Cal.App.2d 782, 786 [221 P.2d 227].) The evidence of guilt was ample and the determination as to the truth or falsity of the testimony has been determined adverse to defendant's contention by the constitutional arbiter of the matter.

■ Claim is made that defendant was denied a speedy trial in not having his trial within 60 days after the filing of the information. (Pen. Code, § 1382.) He was arraigned on September 2, 1955, and on *his motion* the court continued the time to plead to September 7. On that date defendant presented a motion to set aside the information and the district attorney was properly allowed to file an amended information. He was arraigned on the amended information and entered a plea of not guilty to both counts and the court set October 5 as the time of trial. No protest was made as to the date or time. No objections to the trial on that date were indicated nor was such contention made until this appeal

was perfected. It was affirmatively held in *People* v. *O'Leary,* 130 Cal.App.2d 430, 436 [278 P.2d 933], that if a defendant intends to stand on his right to criminal trial within the 60-day period, he must take some action to inform the court, within that period, that he does not waive his right and that failure to object is equivalent to consent.

Defendant next contends that the "evidence used was illegal, with no search warrant." The testimony against defendant was, for the most part, furnished by the little boy who described the acts committed on his body by the defendant. There was ample evidence to sustain the verdicts of the jury aside from any evidence obtained by the officers at the time of defendant's arrest. There was no objection made at the time of trial that the evidence was obtained as a result of an unreasonable search and seizure with the exception that when the pictures were identified by the boy and offered in evidence his counsel stated, "For the record, I would like to object to the materiality of these things being received in evidence." The admission of the pictures in evidence was material as being corroborative of the boy's testimony and as bearing on the intent of defendant. No particular or proper objection was otherwise then and there made indicating that the evidence had been improperly obtained by unreasonable search or seizure and apparently the court was not called upon to pass upon that particular claim. (*People* v. *Kitchens,* 46 Cal.2d 260 [294 P.2d 17].) Even though it may be assumed, which we do not, that the objection thus stated was a proper and sufficient objection, the evidence in relation to the facts was only incidental and corroborative of the boy's direct testimony which completely described the acts committed on his body and which was sufficient in and of itself to show the commission of the offenses without the aid of that evidence. The testimony of the officers and of the complaining witness in reference to the pictures was admitted without objection and defendant admitted their presence in his room. No prejudicial error resulted and there was no sufficient objection or showing made that there was an unreasonable search and seizure. (*People* v. *Spellings,* 141 Cal.App.2d 457 [296 P.2d 889].)

Defendant makes other broad statements as to the claimed unfairness of his trial. We have carefully examined the entire record and find no justifiable grounds for this claim.

The attempted appeal from the claimed order denying a new trial is dismissed. The judgment is affirmed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied July 31, 1956, and appellant's petition for a hearing by the Supreme Court was denied August 16, 1956.