[Crim. No. 8441. Second Dist., Div. Two. Dec. 17, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. JACKSON CHAMBER DANIELS, Defendant and Appellant.

Frank C. Morales, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, and William E. James, Assistant Attorney General, for Plaintiff and Respondent.

HERNDON, J.—Defendant appeals from the judgment entered following a jury trial which resulted in his conviction upon charges of eight separate robberies. He was found to have been armed with a deadly weapon in each instance.

The attorney first appointed by this court to represent defendant upon this appeal advised us that he had not been able to find any prejudicial error in the record. The attorney general thereupon moved to dismiss the appeal. We appointed a second attorney to represent defendant in opposition to this motion. This second defense attorney, both in his opposition to the motion and in his brief filed herein, set forth contentions regarding the merits which required this court to undertake an examination of the record. Accordingly, we denied the motion to dismiss; we now pass upon the merits of the appeal. (*People* v. *Nixon*, 34 Cal.2d 234, 235 [209 P.2d 385].)

As a basis for urging a reversal herein, defendant first argues that the evidence is insufficient to sustain four of the eight robbery counts. In each instance, appellant's argument goes to the question of his identification as the person who committed the robberies charged.

In the first challenged count, the owner of a grocery store testified that appellant looked ''very similar'' to the robber in ''size, coloring, and general appearance'' and ''[i]f it wasn't him, it was someone who looks very, very much like him.'' He also testified that the gun found upon appellant at the time of his arrest was ''very similar'' to the one used in the robbery. A clerk employed in the store also observed the

robbery and testified that he had "no doubt at all" that appellant was the person he had described.

A third witness saw a man run from the store in front of the car he was driving and heard the owner of the store cry "stop him, stop him, get his license." The witness backed to and followed a car that sped away but was unable to obtain the complete license number. He described the car as lavender or orchid in color and as having a "slant back" like a 1949 Pontiac. He observed that the letters on the license plates were "AVP" or "AVF," but he could not give the numbers. Appellant's automobile was a 1949 Oldsmobile with a rear end similar in appearance to a 1949 Pontiac and had the license number "AVF 800." It had been repainted shortly before his arrest, but the undercoat was lavender or orchid in color.

With respect to the robbery charged in the second count, the victim's identification of appellant was positive. The only suggested basis upon which to challenge this witness' testimony is his statement that he believed he had struck appellant in the right leg during the exchange of gun shots which followed the robbery. It is clear, however, that this statement was based upon a movement made by the robber during his flight which led the witness to believe that he had been struck. He testified further, however, that he had been unable to find any traces of blood along the path which the robber thereafter had taken. It would appear that the witness was mistaken in his belief that appellant had been struck, but this in no way detracts from the identification of appellant as the person involved in the robbery.

The victim involved in the third count identified appellant as a person "similar" in appearance to the person who robbed her. She stated further that when she saw him "he had a mustache, but he still looks the same". She testified that he had hair on his chin. Appellant admitted that at the time in question he had a mustache and goatee but said that he had shaved it off following his arrest. In addition, in connection with a count not here challenged, the husband of this witness testified that he could positively identify appellant as the man who robbed their store again about a month later. At that time he asked appellant if he were not the man who had robbed them earlier and appellant admitted that he was.

In the proof of the last count here challenged, the victim positively identified appellant, but made a statement indica-

ting that at a police lineup he had identified someone else as his robber. Actually, the questions and answers which precede and follow this statement make it appear that this particular question and answer probably were reported inaccurately. In any event, however, it is manifest that such conflict presents nothing more than a matter to be resolved by the trier of the facts.

As a matter of fact, the descriptions given by the witnesses to the robberies charged in all of the eight counts were remarkably accurate and consistent. Without further needlessly extending this opinion, we conclude that appellant's first assignment of error is wholly without merit. ▪ As this court recently noted:

"In order to sustain a conviction the identification of the defendant need not be positive. [Citations.] Testimony that a defendant 'resembles' the robber [citation] or 'looks like the same man' [citation] has been held sufficient. ▪ The testimony of one witness is sufficient to support a verdict if such testimony is not inherently incredible. [Citation.] ▪ The sufficiency of the evidence of identification is generally a question for the trier of the facts. [Citation.]'' (*People* v. *Wiest,* 205 Cal.App.2d 43, 45 [22 Cal.Rptr. 846].)

▪ In connection with his first general assignment, appellant makes the parenthetical comment that although the gun which was found in his possession when he was arrested was specifically identified by some of the witnesses as being the gun involved in their robberies, or similar thereto, other witnesses described the gun they had seen as appearing "larger" than the one shown them in court. Even if we were to assume that this testimony should be interpreted as indicating that appellant had not used this particular gun in certain of the robberies, no error was committed when it was received into evidence without objection by defendant. (Cf. *People* v. *Jordan,* 188 Cal.App.2d 456, 464 [10 Cal.Rptr. 495].)

▪ Appellant's second assignment of error, and the one most strongly relied upon, arises from the following exchange that occurred during his cross-examination by the prosecution. "Q. Mr. Daniels—or McDaniels—have you ever been convicted of a felony? A. No, sir. Q. You have never been convicted of a felony? A. No, sir. Q. Calling your attention to the 2nd of August, 1960, Phoenix, Arizona, did you not plead guilty to the charge of grand theft, which was amended from robbery on that date? A. I pleaded guilty to grand theft in

order to, you know, not stay in jail. MR. KRUTOFF: I have no further questions.''

At this point appellant's counsel interposed an objection and moved to strike the final question and answer. The motion was granted and the jury was instructed to disregard the question and answer. In support of this assignment, appellant relies upon the holdings in *People* v. *Elliott,* 104 Cal. App. 107, 110 [285 P. 401], and *People* v. *Chenault,* 74 Cal. App.2d 487, 491-495 [169 P.2d 29].

The facts presented in the last cited decisions were completely dissimilar to those of the instant case. In the *Elliott* case the court stated at page 110: ''The district attorney was then permitted, *over the objection of the defendant,* to ask him if he had not been convicted of other felonies and confined in the United States penitentiary at Leavenworth, *all of which he denied.* These questions were not followed up by any offer of proof of convictions for the crimes, the commission of which was implied in the questions. The district attorney was also permitted to ask the defendant if he had not gone under an assumed name. The cross-examination went entirely too far and court should not have permitted it. [Citations.]''

In the *Chenault* case ''several pages of transcript were consumed'' in questions relating to a purported prior conviction which the defendant denied. The exchange ended in a colloquy between the trial judge and the defendant in which reference was made to the *possibility* of the defendant being guilty of perjury. In addition, in the course of the questioning, the district attorney made an assertion that the defendant had escaped from jail.

■ ''In this state the testimony of a witness may be impeached by proof that he has suffered the prior conviction of a felony. (Code Civ. Proc., § 2051.) This rule applies to a defendant who testifies in his own behalf in a criminal trial notwithstanding the fact that such evidence tends to prejudice him in the eyes of the jury. [Citations.] The nature of the crime or crimes of which he was convicted is a proper subject of inquiry in establishing the fact of his conviction. [Citations.] But details and circumstances comprising the prior offenses are not admissible.'' (*People* v. *David,* 12 Cal.2d 639, 646 [86 P.2d 811].)

■ In the instant case, it cannot be argued with any degree of persuasiveness that the district attorney acted in bad faith in his brief examination of the witness. When ap-

pellant's attention was directed to the Arizona proceeding, he readily admitted that he had entered a plea of guilty to the crime of grand theft. The further statement, referring to the fact that this plea had been made after the charge ''was amended from robbery on that date,'' undoubtedly was improper.

However, this question and the answer thereto were stricken upon appellant's motion and the jury was admonished to disregard them. It must be presumed that the jury heeded this admonition. (*People* v. *Pike,* 58 Cal.2d 70, 85 [22 Cal.Rptr. 664, 372 P.2d 656].) Further, the decision in *People* v. *Elliott, supra,* relied upon by appellant, makes it clear that an error of this kind is not a ground for reversal where it is clear that a miscarriage of justice has not occurred. The concluding language of that decision (p. 112) is equally appropriate here: ''The evidence of guilt was conclusive and leaves no doubt of the correctness of the verdict of the jury. This is a proper case in which to invoke the provisions of the Constitution above referred to [art. VI, § 4½].''

The judgment is affirmed.

Fox, P. J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 5, 1964.